IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| DELFIDIO PEREZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:22-CV-211 (LAG) |
| | : | |
| TYLER EDGAR, | : | |
| | : | |
| Defendant. | : | |
| | : | |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 32). For the reasons below, Defendant's Motion is **GRANTED**.

## FACTUAL BACKGROUND

This suit arises from Plaintiff, Delfidio Perez's, arrest on March 29, 2022 in Grady County, Georgia.[1] (Doc. 1 ¶¶ 63, 73; Doc. 32-1 ¶ 8; Doc. 38-1 ¶ 8). On March 29, 2022, a single car accident occurred near Plaintiff's business property. (Doc. 32-1 ¶ 1; Doc 38-1 ¶ 1). Grady County Sheriff's deputies and Georgia State Patrol were called to investigate the crash. (Doc. 32-1 ¶¶ 3–4; Doc. 38-1 ¶¶ 3–4). Defendant, Georgia State Trooper Tyler Edgar, received a radio call about the accident at roughly 5:28 p.m. and arrived at the scene at 6:11 p.m. (Doc. 32-1 ¶¶ 3–4; Doc. 38-1 ¶¶ 3–4). At some point, Defendant saw Grady County Sheriff deputies rush over to an individual who was not involved in the accident. (Doc. 32-1 ¶ 6; Doc. 38-1 ¶ 6). This individual was Plaintiff. (Doc. 32-1 ¶ 9, Doc. 38-1 ¶

---

[1] The Court derives the relevant facts from Defendant's Statement of Undisputed Material Facts, Plaintiff's responses, and the record. (Docs. 32-1, 38-1). When evaluating the Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff, the nonmoving party. *See Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021) (citation omitted). Where Plaintiff has not controverted facts set forth in Defendant's Statement of Undisputed Material Facts with "specific citation to particular parts of materials in the record," those facts are deemed to be undisputed and admitted. *See* M.D. Ga. L.R. 56; *Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

9). According to Defendant "it appeared to him that [the deputies] were trying to make an arrest and [Plaintiff] was resisting arrest." (Doc. 32-1 ¶ 8).

Body camera footage shows a deputy grab Plaintiff's arm and attempt to put handcuffs on Plaintiff. (Axon_Body_3_Video_2022-03-29_1916_X6039BGBT at 00:16–00:20 (on file with the Court)). Plaintiff resisted and other officers joined in to assist with the arrest. (*Id.* at 00:20–00:30). Plaintiff continued to struggle, and bystanders can be heard calling Plaintiff's name and saying, "Stop, Del. Stop." (*Id.* at 00:31–00:34). One officer drew his taser and attempted to taser Plaintiff.[2] (*Id.*). Defendant "grabbed [Plaintiff's] hand . . . and put [Plaintiff's] hand behind [Plaintiff's] back so that [Plaintiff] could be cuffed." (Doc. 32-1 ¶ 6; Doc. 38-1 ¶ 6). According to Plaintiff, in addition to grabbing his hand or arm, Defendant "placed a knee on Plaintiff's arm, shoulder, and neck." (Doc. 38-1 ¶ 12; Doc. 32-3 at 21:18–20). The body camera footage does not clearly show whether Defendant's knee was on Plaintiff's upper body, but Defendant denies putting his knee on Plaintiff's upper body. (Doc. 32-1 at 7). During the deposition, Plaintiff's counsel showed Defendant a video of the incident which does not show clearly the position of Defendant when Plaintiff was handcuffed. The following exchange occurs:

> **Counsel:** So, which leg do you think that you had on the asphalt?
> **Defendant:** My left leg.
> **Counsel:** Okay. But I'm trying to get a frame by frame of the -- right there at 16 -- 19:16:59 you don't know where your legs are, do you?
> **Defendant:** Correct.
> **Counsel:** And you're the only person who's close, who's down on the ground, who is close to Mr. Perez's right shoulder, neck, and head, correct?
> **Defendant:** Correct.
> **Counsel:** Okay. So, if there was a leg or knee on Mr. Perez's right shoulder, neck, and head it could only, as we're watching it at 19:16:59, it could only be you, agree?
> **Defendant:** Yes, based on the video, yes.

---

[2]  It appears that Plaintiff was not tased as the taser was faulty.

(Doc. 32-4 at 140:22–141:12). Defendant had no interactions or communications with Plaintiff prior to cuffing the Plaintiff. (Doc. 32-1 ¶¶ 4, 10; Doc. 38-1 ¶¶ 4, 10). Furthermore, Defendant did not know the reason Grady County Sheriff deputies initiated the arrest. (Doc. 32-1 ¶ 11; Doc. 38-1 ¶ 11).

After the arrest, Plaintiff asserts that he received medical treatment that same night. (Doc. 32-3 at 13:13–14:1). Plaintiff states he had "pain . . . in [his] arm and at the base of [his] neck," and ultimately received some "pain medication[.]" (Doc. 32-3 at 13:13–14:5; 16:19).

## PROCEDURAL BACKGROUND

On December 13, 2022, Plaintiff initiated this action against several defendants, including Defendant Edgar. (Doc. 1). The Grady County Defendants collectively filed an Answer on January 11, 2023. (Doc. 9). On January 30, 2023, Defendant Edgar filed an Answer and a Motion for Judgment on the Pleadings seeking dismissal of Count Seven alleging intentional infliction of emotional distress. (Doc. 13; *see* Doc. 1 ¶¶ 157–160). Plaintiff responded on February 21, 2023, agreeing that Count Seven should be dismissed and clarifying that Counts Four through Six were not asserted against Defendant Edgar. (Doc. 16 at 3 n.2). Defendant replied on March 3, 2023. (Doc. 17). Since Plaintiff consented, Count Seven was dismissed without prejudice and Defendant's Motion for Judgment on the Pleadings was granted on September 14, 2023. (Doc. 23). On December 11, 2023, Plaintiff and the Grady County Defendants filed a Motion to Dismiss Less Than All Parties of Plaintiff and Certain Defendants. (Doc. 26). On January 5, 2024, the Court granted the Parties' Motion to Dismiss the Grady County Defendants. (Doc. 27). On May 21, 2024, Defendant Edgar filed the instant Motion for Summary Judgment on the remaining claims. (Doc. 32). Plaintiff timely filed a Response on June 18, 2024 (Doc. 38), and Defendant Edgar timely filed a Reply on July 16, 2024 (Doc. 40). The Motion for Summary Judgment is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the

3

movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)); *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020).

  The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018); *Whitehead*, 979 F.3d at 1328. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). If the movant meets their initial burden, the nonmoving party must demonstrate that there is a genuine dispute for trial. *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). The nonmovant must "go beyond the pleadings and . . . present competent evidence in the form of affidavits, answers to interrogatories,

4

depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

Plaintiff brings claims against Defendant for (1) False Arrest, Retaliatory Arrest, and Malicious Prosecution under 42 U.S.C. § 1983 and the First and Fourth Amendments and (2) Excessive Force under 42 U.S.C. § 1983 and the Fourteenth Amendment. (Doc. 1 ¶¶ 90–126; Doc. 32 at 1). Defendant argues that "[e]ven if the Court were to find that [Defendant] is not entitled summary judgment on [these] claims, qualified immunity would bar each of these claims." (Doc. 32-2 at 14).

**I.    False Arrest, Retaliatory Arrest, and Malicious Prosecution Claims**

Plaintiff brings claims for false arrest and for retaliatory arrest. (Doc. 1 ¶¶ 90–104). Defendant argues that he is entitled to summary judgment on the false arrest and retaliatory arrest claims because (1) he cannot be liable "simply if the Grady County Sheriff deputies lacked probable cause or arguable probable cause to arrest Plaintiff, or simply if they retaliated against Plaintiff for comments that he made to them or in their presence"; and (2) "he did not know the arrest lacked a constitutional basis." (Doc. 32-2 at 9 (internal quotation marks and citation omitted)).

Plaintiff does not address Defendant's arguments as to the false and retaliatory arrest claims. (*See* Doc. 38). As Plaintiff's brief is completely silent on his false and retaliatory arrest claims, he has abandoned those claims. (*See id.*); *see Moore v. Camden Prop. Tr.*, No. 1:17-CV-01655-ELR, 2019 WL 11441431, at *3 (N.D. Ga. Mar. 26, 2019) (collecting cases for the proposition that "when an argument is raised that a claim is subject to dismissal, and the [nonmoving] party fails to respond to such an argument, such claims are deemed abandoned"), *aff'd*, 816 F. App'x 324 (11th Cir. 2020); *see also Wood v. City of Warner Robins*, No. 5:19-CV-00319-TES, 2022 WL 987991 (M.D. Ga. Mar. 31, 2022) (granting summary judgment to Defendants with respect to Plaintiff's abandoned retaliation claim); *LaFleur v. Hugine*, 587 F. App'x 536, 540 (11th Cir. 2014) (per curiam) ("[F]ailure to brief and argue th[ese] issue[s] during the proceedings before the district court is grounds for finding that the[se] issue[s] ha[ve] been abandoned.") (first alteration

in original) (citation omitted); *see also Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) (per curiam) (holding that the district court "properly treated as abandoned the [plaintiffs'] excessive force and state law claims, which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment").

Plaintiff also brings a claim for malicious prosecution. (Doc. 1 ¶¶ 90–104). Defendant moves for summary judgment on the malicious prosecution claim because "Plaintiff has admitted that [Defendant] did not initiate a criminal prosecution against him relating to any conduct or events that occurred on March 29, 2022." (Doc. 32-2 at 9). As with the false and retaliatory arrest claims, Plaintiff does not address Defendant's arguments to the malicious prosecution claim. (*See* Doc. 38). Nowhere in Plaintiff's brief does he mention "malicious prosecution." (*Id.*). Thus, he has abandoned this claim as well. *See Moore*, 2019 WL 11441431, at *3 (collecting cases for the proposition that "when an argument is raised that a claim is subject to dismissal, and the [nonmoving] party fails to respond to such an argument, such claims are deemed abandoned").

As Plaintiff has abandoned his false arrest, retaliatory arrest, and malicious prosecution claims, Defendant is entitled to summary judgment on these claims. Because Plaintiff abandoned these claims, the Court does not address Defendant's qualified immunity defense.

## II.   Excessive Force Claim

Finally, Plaintiff brings a claim for use of excessive force in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. (Doc. 1 ¶¶ 105–126). Defendant argues that he is entitled to summary judgment on the excessive force claim because (1) "[Defendant] used minimal force to assist the Grady County Sheriff deputies to make their arrest"; (2) "he had a legitimate law enforcement justification to assist as he did"; and (3) "no evidence has been produced to show that [] [the] use of force by [Defendant] caused significant injury to Plaintiff." (Doc. 32-2 at 13). Defendant further argues that qualified immunity bars this claim. (*Id.* at 14–17).

"Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties."

*Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018) (citations omitted). "Under qualified immunity, 'all but the plainly incompetent or one who is knowingly violating the federal law' are shielded from litigation." *Id.* at 951 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate" the plaintiff's constitutional rights. *Alcocer*, 906 F.3d at 951 (citation omitted). An official asserting "qualified immunity must first establish that [] he was acting within the scope of his discretionary authority." *Id.* An officer acts within his discretionary authority when he "(a) perform[s] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (alteration omitted) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004)). The Court looks at "the general nature of the [officer's] action," and not whether the actions "may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* (quoting *Holloman*, 370 F.3d at 1266).

Plaintiff argues that Defendant was acting "outside the scope of his legal authority" such that qualified immunity cannot apply. (Doc. 38 at 6–10). While Georgia State Patrol troopers' "primary dut[ies] [are] . . . to patrol the public roads and highways of [Georgia]," they also have the authority to "prevent, detect, and investigate violations of the criminal laws of [Georgia] . . . which are committed upon these public roads and highways[,]" as well as to "cooperate with all law enforcement agencies . . . in enforcing the laws . . . relating to the operation of motor vehicles." O.C.G.A. §§ 35-2-32(b), 35-2-33(b). Thus, "engaging in searches and seizures *in general* is part of [Defendant's] job-related powers and responsibilities" as a Georgia State Patrol officer. *See Holloman*, 370 F.3d at 1266. As Defendant was engaged in a seizure at the scene of a motor vehicle crash which occurred on a public road, Defendant was acting within his discretionary authority as a Georgia State Patrol officer.

7

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted). To meet this burden, a plaintiff must establish that (1) "the officer's conduct amounted to a constitutional violation" *and* (2) "the right violated was 'clearly established' at the time of the violation." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court's assessment of whether the plaintiff has met his burden "is fluid" and may be done in whatever order is deemed most appropriate for the case. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) ("These two requirements may be analyzed in any order." (citation omitted)).

### A. Constitutional Violation

Plaintiff argues that the "use of force applied by Defendant violated Plaintiff's Fourth Amendment right to be free from excessive force." (Doc. 38 at 10). "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citation omitted). "An officer's use of force, however, violates the Fourth Amendment when it is *objectively unreasonable* under the facts and circumstances of a specific case, 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting *Graham*, 490 U.S. at 396); *Richmond v. Badia*, 47 F.4th 1172, 1179–80, 1182 (11th Cir. 2022). To determine whether an officer used excessive force, courts conduct a two-step inquiry. "First, [courts] ask whether the specific kind of force is categorically unconstitutional. Second, if the kind of force is not categorically unconstitutional, [courts] then ask, weighing the factors set forth in *Graham*, whether the amount of force was excessive." *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (citation omitted).

The force Defendant used is not categorically unconstitutional. The Eleventh Circuit has "never held that a tackle is a categorically unconstitutional kind of force." *Id.* Other uses of physical force, "such as grabbing Plaintiff's arm[,]" are also not categorically unconstitutional. *Clinch v. Chambers*, No. 2:22-CV-94, 2024 WL 644567, at *10 (S.D. Ga. Feb. 15, 2024) (citing *Graham*, 490 U.S. at 396). Construing the facts in the light most favorable to Plaintiff and accepting, for purposes of this Motion, that Defendant put his knee on Plaintiff's arm, shoulder, and neck, the Defendant's actions fall somewhere between grabbing Plaintiff's arm and tackling him—neither of which is categorically unconstitutional.[3] The question is, thus, whether the force used by Defendant was excessive.

"Determining whether the force used to effect a[n arrest] was objectively reasonable requires case-by-case 'balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.'" *Stephens*, 852 F.3d at 1321 (quoting *Graham*, 490 U.S. at 396). To do this, courts evaluate six factors:

> (1) the severity of the suspect's crime, (2) whether the suspect poses an immediate threat of harm to others, (3) whether the suspect is actively resisting arrest or trying to flee, (4) the need for the use of force, (5) the relationship between the need for force and the amount of force used, and (6) how much injury was inflicted.

*Wade v. Daniels*, 36 F.4th 1318, 1325 (11th Cir. 2022) (citing *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (per curiam)). A defendant need not show that all the factors weighed in his favor for his use of force to have been objectively reasonable. *See Shaw*, 884 F.3d at 1099 n.5 (holding that the defendant's use of force was objectively reasonable despite the absence of the first and third factors); *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1229 (11th Cir. 2020) ("Not all of the factors are relevant

---

[3]   Notably, it was the Grady County Sheriff deputies who took Plaintiff to the ground and attempted to tase him, not Defendant. The Eleventh Circuit has held that "[t]he use of a taser is not categorically unconstitutional" and has "found that the use of a taser can be appropriate in a wide array of situations." *Charles*, 18 F.4th at 701 (citations omitted).

to all excessive force cases." (citation omitted)). The use of "*de minimis* force, without more, will not support a" Fourth Amendment excessive force claim. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

The first factor is the severity of crime at issue. The lens for this review is that of a reasonable officer in Defendant's position. *See Graham*, 490 U.S. at 396. Here, the reasonable officer is charged with the knowledge and observations of Defendant—not every officer on the scene. That is particularly important here as it is undisputed that Defendant was not present when the arrest began and only moved to the area upon seeing officers rush toward Plaintiff. (Doc. 32-1 ¶ 6; Doc. 38-1 ¶ 6). Accordingly, the crime at issue is obstruction/resisting arrest. In *Charles v. Johnson*, the Eleventh Circuit found that an officer's use of a tackle was reasonable when the plaintiff was charged with obstruction and failed to obey multiple commands from the deputies. 18 F. 4th at 700–01. Here, Plaintiff struggled when the officers attempted to arrest him and disobeyed commands to put his hands behind his back. Accordingly, this factor weighs in Defendant's favor.

The second factor examines whether Plaintiff "pose[d] an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. When Defendant approached the scene, while Plaintiff was already on the ground with five officers surrounding him and a taser drawn, Plaintiff was not handcuffed and was actively struggling. (Doc. 32-1 ¶ 6; Doc. 38-1 ¶ 6; *see also* Axon_Body_3_Video_2022-03-29_1916_X6039BGBT at 00:20–00:34 (on file with the Court)). Defendant secured Plaintiff's hands so he could be handcuffed. (Doc. 32-2 at 5; Doc. 32-1 ¶¶ 7–8; Doc. 38-1 ¶¶ 7–8). Until Plaintiff was in cuffs, he posed an active and immediate threat. Thus, this factor weighs in favor of Defendant.

The third factor asks whether the plaintiff was actively resisting or attempting to flee. *See Graham*, 490 U.S. at 396. There is no genuine dispute as to whether Plaintiff was resisting the Grady County Sheriff deputies' efforts to place him under arrest. (Doc. 32-4 at 39:21, 40:2–5, 70:16–17, 73:4–5, 87:10–11; Doc. 40 at 2–3). The body camera footage shows Plaintiff actively struggling as officers try to detain him.

10

(Axon_Body_3_Video_2022-03-29_1916_X6039BGBT at 00:31–00:34 (on file with the Court)). Thus, this factor weighs in favor of Defendant.

The fourth factor examines the officer's need for the use of force. *See Wade*, 36 F.4th at 1325. Generally, courts have found that there is "a clear need for the use of force" when criminal suspects physically resist or ignore commands. *Suggs v. Ingram*, No. 5:19-cv-00065-TES-CHW, 2020 WL 2529853, at *3 (M.D. Ga. Apr. 28, 2020), *R. & R. adopted*, 2020 WL 2530307 (M.D. Ga. May 18, 2020). The need for the use of force hinges on whether "a reasonable officer on the scene could have believed [the plaintiff] posed a danger to himself or others and was actively resisting arrest." *Smith v. LePage*, 834 F.3d 1285, 1295 (11th Cir. 2016). Defendant drew a reasonable inference that there was a need for the use of force to restrain Plaintiff who was actively resisting the other officers' attempts to handcuff him. Thus, this factor weighs in favor of Defendant.

Under the fifth factor, courts analyze the relationship between the need for force and the amount of force used. *See Wade*, 36 F.4th at 1325. "[T]o determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force [was] necessary in the situation at hand." *Lee*, 284 F.3d at 1197 (internal quotation marks and citation omitted). "Proportionality is preeminent in the excessive-force context," therefore when a "reasonable jury could conclude that the . . . force [an officer] employed was drastically in excess of what" a criminal suspect's behavior or actions "warranted," the fifth factor will weigh in the plaintiff's factor. *See Patel v. City of Madison*, 959 F.3d 1330, 1340 (11th Cir. 2020) (first citing *Saunders v. Duke*, 766 F.3d 1262, 1269 (11th Cir. 2014); and then citing *Lee*, 284 F.3d at 1197). Defendant's use of force here was *de minimis*. *See Nolin*, 207 F.3d at 1255–57 (finding force to be *de minimis* where an officer grabbed plaintiff "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van"); *see also Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam) (finding the force to be minor where officers slammed plaintiff "against a wall, kicked his legs apart, required him to put his arms above his head, and pulled his wallet from his pants pocket"). This factor also weighs in favor of Defendant.

11

Although not one of the original *Graham* factors, the Eleventh Circuit has also instructed district courts to consider the extent of the injury inflicted in determining whether the force was excessive. *See Richmond*, 47 F.4th 1172 at 1182 (citing *Saunders*, 766 F.3d at 1267). Here, the injuries attributable to the arrest were minor. Plaintiff "received some medical treatment . . . that same night [of the arrest]." (Doc. 32-3 at 13:23–14:1). At the first hospital, Plaintiff did not receive medical treatment for "the pain . . . in [his] arm and at the base of [his] neck," but he was told "that [he] had a broken tendon in [his] arm and [he] had inflammation . . . on [his] neck." (*Id.* at 14:2–11). Later that night, Plaintiff went to a second hospital, where they took x-rays and an MRI, and "gave [him] pills to manage . . . the pain." (*Id.* at 16:12–22). In cases with similar and more egregious injuries, the Eleventh Circuit has held that those injuries were *de minimis*. *See, e.g.*, *Nolin*, 207 F.3d at 1255, 1258 (holding that a plaintiff's bruising constituted a *de minimis* injury when the defendant officer "grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van"); *Taylor v. Taylor*, 649 F. App'x 737, 741, 746–47 (11th Cir. 2016) (per curiam) (holding that a "spiral fracture" and "multiple contusions" were *de minimis*). Thus, this factor weighs in favor of Defendant.

Accordingly, considering the *Graham* factors and the fact that the injury sustained by Plaintiff was *de minimis*, Plaintiff has not proven that Defendant's conduct violated a constitutional right.

### B. Clearly Established Law

Even if Plaintiff had demonstrated a constitutional violation, Defendant would be entitled to qualified immunity because Plaintiff fails to show that Defendant violated any clearly established right. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) ("Plaintiffs have the burden of demonstrating that Defendants—at the pertinent time and given the specific circumstances of this case—had fair notice that their conduct would violate clear federal law." (citation omitted)). "In assessing the clearly-established

12

prong, [the court] ask[s] whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted." *Maughon v. City of Convington*, 505 F. App'x 818, 821 (11th Cir. 2013) (per curiam) (emphasis in original) (citation and internal quotations omitted). A plaintiff can prove that a particular constitutional right was clearly established by demonstrating that (1) "a materially similar case has already been decided, giving notice to the [officer];" (2) "a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] Constitution that prior case law is unnecessary." *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) (second alteration in original) (citation omitted).

First, "[Plaintiff] has cited no case with materially similar facts from Supreme Court, the Eleventh Circuit, or the Supreme Court of Georgia which might have given [Defendant] fair warning that his actions were unconstitutional, nor has our research revealed such a case." *See Alday v. Groover*, 601 F. App'x 775, 777–78 (11th Cir. 2015). Second, Plaintiff has not pointed to a statutory provision that applied to the circumstances clearly establishes the unlawfulness of Defendant's conduct. Defendant was lawfully at the site of the accident because Georgia State Patrol were called to investigate the crash. O.C.G.A. §35-2-32; (Doc. 32-1 ¶¶ 3–4; Doc. 38-1 ¶¶ 3–4). When Defendant reasonably perceived that Grady County Sheriff deputies were struggling to effectuate an arrest, Defendant lawfully approached and became involved. (Doc. 32-1 ¶¶ 6, 9; Doc. 38-1 ¶¶ 6, 9). Finally, Plaintiff has not shown that Defendant's conduct was so beyond "the hazy border between excessive and acceptable force" that Defendant knew he was violating the Constitution. *See Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (citation and internal quotations omitted).

Because Plaintiff has not demonstrated that a constitutional violation occurred or that Defendant violated a clearly established constitutional right, Defendant is entitled to qualified immunity as to Plaintiff's excessive force claim.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. 32) is **GRANTED**.

**SO ORDERED**, this 18th day of March, 2025.

<u>/s/ Leslie A. Gardner</u>
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**